**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STATE FARM FIRE AND CASUALTY CO.** | : | |
| **v.** | : | **CIVIL ACTION** |
| **PATRICK McDERMOTT, d/b/a PATRICK McDERMOTT PLASTERING** | : | **NO. 11-5508** |

**MEMORANDUM**

**TUCKER, C.J.** **October 14, 2014**

Presently before the Court is Plaintiff State Farm Fire and Casualty Company's Motion for Summary Judgment (Doc. 16), Defendant Patrick McDermott d/b/a Patrick McDermott Plastering's Answer in Response to Plaintiff's Summary Judgment Motion (Doc. 17), Defendant McDermott's Cross-Motion for Summary Judgment (Doc. 18), Defendant McDermott's Memorandum of Law in Support of his Cross-Motion for Summary Judgment (Doc. 19), Plaintiff State Farm's Response in Opposition to Defendant's Cross-Motion for Summary Judgment (Doc. 20), and Defendant McDermott's Reply to Plaintiff's Response in Opposition to Defendant's Cross-Motion for Summary Judgment (Doc. 21). Upon consideration of the parties' motions with briefs and exhibits, and for the reasons set forth below, Plaintiff's Motion for Summary Judgment is **GRANTED** and Defendant's Cross-Motion for Summary Judgment is **DENIED**.

## I. FACTS AND PROCEDURAL BACKGROUND[1]

Because the Court writes primarily for the parties, the Court sets forth only those facts that are relevant to its conclusion. Plaintiff State Farm Fire and Casualty Company ("State

[1] The facts described herein are undisputed unless otherwise noted.

Farm") issued five insurance policies providing comprehensive business liability coverage to Defendant Patrick McDermott, here doing business as Patrick McDermott Plastering ("McDermott").[2] (Second Am. Compl. ¶ 7; Answer ¶ 7.) In March of 2012, McDermott, along with another party, was named in an action for negligence and breach of contract/warranty brought by the PulteGroup (hereafter referred to as the "underlying PulteGroup action"). (Second Am. Compl. ¶ 11; Answer ¶ 11.) The underlying PulteGroup action claimed that on or about February 12, 2002, McDermott entered into a building contract with the PulteGroup to "plaster/stucco and install window and door flashing and felt paper for approximately 299 homes in the residential community of the Traditions at Washington Crossing, located in Washington Crossing, Bucks County, PA." (*PulteGroup, Inc. a/k/a Pulte Homes, Inc. a/k/a Pulte Home Corporation of Delaware County v. Patrick McDermott Plastering, LLC and Nassau Construction Company, LLC*, No. 2010-08958, Fourth Am. Compl. ¶¶ 4-5 (Pennsylvania Court of Common Pleas for Bucks County filed Mar 26, 2012)). From approximately May 1, 2002 through September 1, 2005, McDermott plastered and/or stuccoed and installed window and door flashing and felt paper for the approximately 299 homes located in the Traditions at Washington Crossing community. (Id. at ¶ 6.) The PulteGroup further alleged that on or about October 23, 2008, the PulteGroup, with the help of a water intrusion specialist, became aware that McDermott had "failed to install a drip cap under the patio doors, improperly fastened the ledger board of the deck to the homes, failed to properly install felt paper under the soffit or between the back walls and the fascia, failed to properly flash under the window flanges, failed

[2] The first agreement (Policy No. 98-LJ-0149-0) covered the period from February 15, 2002 through February 15, 2003. The second agreement (Policy No. 98-NB-7715-3) covered the period from February 15, 2003 through February 15, 2004. The third agreement (Policy No. 98-NW-0064-2) covered the period from February 15, 2004 through February 15, 2005. The fourth agreement (Policy No. 98-NY-6273-5) covered the period from February 15, 2005 through February 15, 2006. The fifth agreement (Policy No. 98-PE-3040-5) covered the period from February 15, 2006 through February 15, 2007.

to use felt paper behind the cladding on the header, etc." (Id. at ¶ 10.) Because of these defects, the PulteGroup claims, water intrusion became an ongoing and reoccurring issue for the approximately 299 homes in the residential community, causing losses to PulteGroup through lawsuits filed against them by homeowners. (Id. at ¶¶ 11-14.)

McDermott sought out defense and indemnity from State Farm for the underlying PulteGroup action. (Second Am. Compl. ¶ 14; Answer ¶ 14.) State Farm claims they reserved their right to disclaim coverage under certain exclusions and provisions found within the business liability insurance policies. (Second Am. Compl. ¶ 15, Ex. C.) State Farm is currently providing McDermott with a defense in the PulteGroup action. (Second Am. Compl. ¶ 15; Answer ¶ 15.) State Farm has since filed the instant suit challenging their obligation to cover McDermott.

On September 1, 2011, State Farm filed the instant action with the Eastern District of Pennsylvania and later filed two amendments, the final amendment being filed on March 28, 2013. State Farm seeks a determination that it has no obligation to defend or indemnify McDermott from the PulteGroup action based on certain exclusions and provisions noted in the insurance policies issued to McDermott. On May 14, 2013, State Farm filed the instant Motion for Summary Judgment, which was followed by a Cross-Motion for Summary Judgment by McDermott on June 13, 2013 and various supporting briefs and documents from both parties. The Court's analysis follows.

## II. STANDARD OF REVIEW

Summary judgment is awarded only when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(a); *Liberty Mut. Ins. Co. v. Sweeney,* 689 F.3d 288, 292 (3d Cir. 2012). A factual dispute between the

parties will not defeat a motion for summary judgment unless it is both genuine and material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986); *Dee v. Borough of Dunmore,* 549 F.3d 225, 229 (3d Cir. 2008). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *See Anderson*, 477 U.S. at 248; *Fakete v. Aetna, Inc.*, 308 F.3d 335, 337 (3d Cir. 2002).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. *See Celotex v. Catrett*, 477 U.S. 317, 327 (1986). Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Under Federal Rule of Civil Procedure 56(e), the opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *See Marten v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007).

At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249 (citations omitted); *Jiminez v. All American Rathskeller, Inc.,* 503 F.3d 247, 253 (3d Cir. 2007). In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. *See Horsehead Indus., Inc. v. Paramount Communications, Inc.*, 258 F.3d 132, 140 (3d Cir. 2001). The court must award summary judgment on all claims unless the non-moving party shows through affidavits or admissible evidence that an issue of material fact remains. *See, e.g., Love v. Rancocas Hosp.*,

270 F. Supp. 2d 576, 579 (D.N.J. 2003); *Koch Materials Co. v. Shore Slurry Seal, Inc.*, 205 F. Supp. 2d 324, 330 (D.N.J. 2002).

The filing of Cross-Motions for Summary Judgment does not change this analysis. *See Transportes Ferreos de Venezuela II CA v. NKK Corp.*, 239 F.3d 555, 560 (3d Cir. 2001); *Appelmans v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987). The filing of such claim by the parties "does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist." *Transportes Ferreos de Venezuela II CA*, 239 F.3d at 560 (citation omitted). If review of Cross-Motions for Summary Judgment reveals no genuine issue of material fact, then judgment will be entered in favor of the party deserving of judgment in light of the law and undisputed facts. *See Id.*; *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 302 (3d Cir. 1998) (citation omitted); FED. R. CIV. P. 56(c).

## III. DISCUSSION

This Court sits in diversity and therefore must apply state substantive law and federal procedural law. *See Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 262 (3d Cir. 2011); *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938). McDermott is a Pennsylvania limited liability corporation with its principal place of business in Glenside, PA. (Counter-cl. ¶ 1; Answer to Counter-cl ¶ 1.) State Farm is a wholly-owned subsidiary of State Farm Mutual Automobile Insurance Company, an Illinois mutual insurance company with its principal place of business in Bloomington, Illinois. (Counter-cl. ¶ 2; Answer to Counter-cl ¶ 2.) Both parties claim jurisdiction through 28 U.S.C. 1332(a). (Second Am. Compl. ¶ 2; Counter-cl ¶ 4.) Both parties seek declaratory judgment under 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure. (Second Am. Compl. ¶ 1; Counter-cl. ¶ 3.) This case does not involve matters

governed by the Federal Constitution or acts of Congress, the alleged action here occurred in Philadelphia, and both parties make claims of diversity jurisdiction and use Pennsylvania state law to support their arguments. (Second Am Compl. ¶¶ 2-15, Ex. B; Answer ¶¶ 2-15; Counter-cl. ¶ 4; Answer to Counter-cl ¶ 4; Pl.'s Mot. for Summ. J. ¶¶ 33-105; Mem. of Law in Support Cross-Mot. for Summ. J. 2-8.) Additionally, Under Pennsylvania choice of law rules, an insurance contract is governed by the law of the state in which the contract was made. *See Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999) (citing *Travelers Indem. Co. v. Fantozzi ex rel. Fantozzi*, 825 F. Supp. 80, 84 (E.D.Pa. 1993)). Pennsylvania state law will therefore govern.

**A. The Underlying PulteGroup Action Complaint Does Not Allege an "Occurrence" as Required by the State Farm Policies**

The Supreme Court of Pennsylvania has established that "[a] carrier's duty to defend and indemnify an insured in a suit brought by a third party depends upon a determination of whether the third party's complaint triggers coverage." *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Company*, 908 A.2d 888, 896 (Pa. 2006) (citing *Mutual Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999)). The Pennsylvania Supreme Court has also emphasized that Courts are to determine the obligation by a casualty insurance company to defend and indemnify an action brought against an insured solely by the allegations of the complaint. *Kvaerner*, 908 A.2d at 896 (citations omitted). This duty to defend "carries with it a conditional obligation to indemnify in the event the insured is held liable for a claim covered by the policy," and although the "duty to defend is separate from and broader than the duty to indemnify, both duties flow from a determination that the complaint triggers coverage." *General Acc. Ins. Co. of America v. Allen*, 692 A.2d 1089, 1095 (Pa. 1997) (citing *Pacific Indem. Co. v. Linn*, 766 F.2d 754 (3d Cir. 1985)).

In determining when the duty to defend commences, a court is to compare the relevant insurance policies with the language of the underlying complaint in order to find whether the allegations set forth within the complaint constitute the types of events that will trigger coverage. *See Kvaerner*, 908 A.2d at 896-98; *Mutual Benefit Ins. Co.*, 725 A.2d at 745-47. More specifically, the Pennsylvania Supreme Court has stated that:

> A court's first step in a declaratory judgment action concerning insurance coverage is to determine the scope of the policy's coverage . . . After determining the scope of coverage, the court must examine the complaint in the underlying action to ascertain if it triggers coverage. If the complaint against the insured avers facts that would support a recovery covered by the policy, then coverage is triggered and the insurer has a duty to defend until such time that the claim is confined to a recovery that the policy does not cover.

*General Accident Ins. Co. of America*, 692 A.2d at 1095. A court's primary goal in interpreting policy is to ascertain the intentions of the parties as manifested by the policy's terms. *Kvaerner*, 908 A.2d at 896-98. A court must give effect to clear and unambiguous language, but when a provision is ambiguous the policy is to be construed in favor of the insured "to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage." *Id.* (citation omitted). Here, neither party asserts that the contract language itself is ambiguous but they instead disagree over how the incident alleged in the underlying PulteGroup Complaint applies to case law.

Each of the comprehensive business liability insurance policies entered into by State Farm and McDermott contain the following language:

> **SECTION II: COMPREHENSIVE BUSINESS LIABILITY**
> **COVERAGE L –BUSINESS LIABILITY**
>
> We will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury, property damage, personal injury** or **advertising injury** to which this insurance applies . . . This insurance applies only:

> 1. to **bodily injury or property damage** caused by an **occurrence** which takes place in the **coverage territory** during the policy period
>
> . . .
>
> **SECTION II: DEFINITIONS**
>
> This section contains the definitions of the words printed in bold face in Section II of this policy. It is an integral part of the policy. The definitions appearing below will be applied as if they were included each time the words they define are used in Section II of this policy.
>
> . . .
>
> 12. **occurrence** means:
>
> a. an accident, including continuous or repeated exposure to substantially the same general harmful conditions which result in **bodily injury** or **property damage**; or
>
> b. the commission of an offense, or a series of similar or related offenses, which results in **personal injury** or **advertising injury**;
>
> . . .
>
> 16. **property damage** means:
>
> a. physical injury to or destruction of tangible property, including all resulting loss of use of that property; or
>
> b. loss of use of tangible property that is not physically injured or destroyed, provided such loss of use is caused by physical injury to or destruction of other tangible property . . .

(Pl.'s Mot. for Summ. J., Ex. A at 18, 27, and 29-30) (emphasis in original).[3] According to the above language, an insured can only obtain coverage if the alleged bodily injury or property damage is caused by an "occurrence," defined here as an "accident." *See Kvaerner*, 908 A.2d at 898; *Gene's Restaurant, Inc. v. Nationwide Ins. Co.*, 548 A.2d 246, 247 (Pa. 1988); *Specialty Surfaces Int'l Inc. v. Continental Cas. Co.*, 609 F.3d 223, 238-39 (3d Cir. 2010). The State Farm policy itself gives no definition for the term "accident." Courts in this district and in the state of Pennsylvania have, however, commented on identical language found in commercial general liability ("CGL") insurer contracts and have defined an "accident" as "[a]n unexpected and

[3] Plaintiff files all five Comprehensive Business Liability Insurance Politics under Exhibit A. The language is identical across all policies and found on the same pages in each document.

undesired event, or something that occurs unexpectedly or unintentionally," with "[t]he key term in the ordinary definition of 'accident' [being] 'unexpected.'" *Kvaerner*, 908 A.2d at 897-99; *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 292 (Pa. 2007); *Wausau Underwriters Ins. Co. v. State Auto. Mut. Ins. Co.*, 557 F. Supp. 2d 502, 513 (D.N.J. 2008). This understanding of the term "implies a degree of fortuity." *Donegal Mut. Ins. Co.*, 938 A.2d at 292; *Wausau Underwriters Ins.*, 557 F. Supp. 2d at 513.

State Farm first contends that the underlying PulteGroup action Complaint is, in essence, a claim for faulty workmanship despite the fact that the document asserts only negligence and breach of contract as causes of action. (Pl.'s Mot. for Summ. J., Ex. B. at ¶¶ 16-42.) State Farm then argues that the damage alleged in the PulteGroup action Complaint was a result of McDermott's own faulty workmanship and that such failures lack the element of fortuity required under the State Farm policy. In response, McDermott asserts that State Farm does not have the right to base its coverage on what is alleged in essence but instead must accept the averments of negligence and breach of contract as they have been pled by the PulteGroup. McDermott argues that the negligence alleged by the PulteGroup constitutes the occurrence required under the State Farm policies, and as a result State Farm must defend and indemnify McDermott from the PulteGroup action.

In this case, the underlying PulteGroup action states:

> On or about February 12, 2002, Plaintiff Pulte and Defendant [McDermott] entered into a building contract. A true and correct copy of the aforementioned contract is hereto attached and made part hereof, and marked as Exhibit "A" . . . Pursuant to the terms of the aforementioned contract, Defendant [McDermott] agreed to plaster/stucco and install window and door flashing and felt paper for approximately 299 homes in the residential community of the Traditions at Washington Crossing, located in Washington Crossing, Bucks County, PA.
>
> . . .
>
> Upon information and belief, on or about October 23, 2008, Plaintiff Pulte became aware, by a water intrusion specialist, that Defendant [McDermott] and/or

> Defendant NCC failed to install a drip cap under the patio doors, improperly fastened the ledger board of the deck to the homes, failed to properly install felt paper under the soffit or between the back walls and the fascia, failed to properly flash under the window flanges, failed to use felt paper behind the cladding on the header, etc. . . . Upon information and belief, the aforementioned water intrusion was an ongoing and re-ocurring issue for approximately 299 homes in the residential community of the Traditions at Washington Crossing, Bucks County, PA.
>
> . . .
>
> The Defendant was negligent, careless, both generally and in the following particular respects . . . failing to properly install felt paper and flash the walls, windows, doors and appurtenances . . . failing to properly train Defendants' employees and/or provide personnel competent in the proper procedures for installing and/or inspecting the felt paper and flashing . . . allowing and permitting defects and/or irregularities to develop and remain in and about the walls, windows, doors and appurtenances thereto . . . failure of the Defendants and/or Defendant's employees to notice the aforesaid defect . . . failure of the Defendants and Defendant's employees to properly flash the windows by installing the flashing backwards . . . failure of the Defendants and/or Defendant's employees to properly flash the windows by cutting the drip caps too short . . .
>
> . . .
>
> Defendant [McDermott] provided a written warranty guaranteeing that all work and/or materials provided under the contract meet or exceed all applicable Federal, State and local laws, building codes and agency regulations and that said work and/or materials are intended for use in a residential structure and meet all VA/FHA compliance regulations . . . Defendant [McDermott] breached the aforementioned building contract by misapplying the plaster/stucco and failing to properly install the felt paper and flash the windows and/or doors during the installation process . . . .

(Second Am. Compl., Ex. B at ¶¶ 4-5, 10-11, 23, 33, and 36.) In considering whether the allegations within the Complaint trigger the insurer's duty to defend, this Court must construe the factual allegations of the underlying complaint liberally and resolve all doubts as to coverage in favor of the insured. *See Berg Chilling Sys. v. Hull Corp.*, 70 F. App'x 620, 624 (3d Cir. 2003); *Westfield Ins. Co. v. Bellevue Holding Co.*, 856 F. Supp. 2d 683, 694 (E.D.Pa. 2012). The analysis here must also focus on the substance of the allegations within the Complaint as

opposed to "the particular cause of action that a complaint pleads." *Westfield Ins. Co.*, 856 F. Supp. 2d at 694; *Erie Ins. Exch. v. Muff*, 851 A.2d 919, 926 (Pa. Super. Ct. 2004).[4]

---

[4] This Court faces the initial matter of how to read the underlying PulteGroup Action Complaint filed against McDermott. State Farm advocates using the "gist of the action" doctrine. The gist of the action doctrine adopted by Pennsylvania's intermediate courts is designed to maintain the conceptual distinction between breach of contract claims and tort claims. *Pennsylvania Mfrs.' Ass'n Ins. Co. v. L.B. Smith, Inc.*, 831 A.2d 1178, 1182 (Pa. Super. Ct. 2003) (citations omitted). The doctrine operates by precluding plaintiffs from recasting ordinary breach of contract claims into tort claims. *Id.* More specifically, "[w]hen a plaintiff alleges that the defendant committed a tort in the course of carrying out a contractual agreement, Pennsylvania courts examine the claim and determine whether the 'gist' or gravamen of it sounds in contract or tort." *Id.* (citing *Yocca v. Pittsburgh Steelers Sports, Inc.*, 806 A.2d 936 (Pa. Commw. Ct. 2002)). This test, moreover, is concerned with the nature of the action as a whole and is not limited to isolated instances of conduct. *Id.*

McDermott takes issue with the use of the gist of the action doctrine, citing the Third Circuit opinion, *Berg Chilling Systems v. Hull Corp.*, which states that:

> [the gist of the action] test has not been adopted by the Pennsylvania Supreme Court and it does not comport with the case law of this Circuit. We have made clear that a court undertaking a duty to defend coverage analysis should not rely entirely upon whether a plaintiff characterizes its claim as one arising in tort or contract.

70 F. App'x at 624. In response, State Farm lists a number of cases in which the Third Circuit not only recognizes the gist of the action doctrine, but applies it. None of these cases, however, use the doctrine in the insurance coverage context. In *Toledo Mack Sales & Service, Inc. v. Mack Trucks, Inc.*, the Third Circuit uses the gist of the action doctrine to determine whether a claim for misappropriation of trade secrets sounded primarily in tort or in contract under a license agreement. 530 F.3d 204, 229 (3d Cir. 2008). The issue in *Pediatrix Screening, Inc. v. Telechem Int'l, Inc.*, involved a question of whether a fraudulent misrepresentation was to be treated as a tort or breach of contract. 602 F.3d 541, 548 (3d Cir. 2010). In *Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc.*, the Third Circuit used the gist of the action test in order to determine if the district court erred by allowing a fiduciary duty claim to go forward. 247 F.3d 79 (3d Cir. 2001). None of these cases deal with issues similar to the insurance coverage matter before this Court.

In *Nat'l Fire Ins. Co. of Hartford v. Robinson Fans Holdings, Inc.*, a court in the Western District of Pennsylvania reiterated the point that neither the Pennsylvania Supreme Court nor the Third Circuit had changed their position with regard to the gist of the action doctrine in insurance coverage cases since *Berg Chilling*. No. 10-1054, 2011 WL 2842303, at *3-5 (W.D.Pa. July 18, 2011). The court also explains why its use would be inconsistent with the duty to defend:

> The gist of the action doctrine relates to the difficulties inherent in allowing a party to proceed with both tort and contract claims for harm that arose in connection with a contractual relationship—such as differences in damages and standards of proof . . . In other words, the doctrine is used to assess which claims in a case should be permitted to proceed. In this case, I am not asked to determine whether Pennsylvania law bars the plaintiff in the underlying action from recovering on a negligence claim, due to the contractual essence of the case. Instead, the appropriate parameters of that litigation are issues for the presiding court.

*Id.* (citations and quotation marks omitted). This line of reasoning has been followed by the Superior Court of Pennsylvania and a sister court of this district. *See Indalex Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 83 A.3d 418, 425-426 (Pa. Super. Ct. 2013); *Westfield Ins. Co.*, 856 F. Supp. 2d at 701 n.6 (E.D.Pa. 2012). There are cases in which the doctrine has been used in the insurance coverage, however, none of those cases change the precedential landscape commented on quite clearly in *Berg Chilling*. This Court is not asked to foreclose the possibility of any of the claims presented in the underlying PulteGroup Action. Rather, this Court is tasked with

The underlying PulteGroup Action alleges both negligence and breach of contract as causes of action, however, the courts have made clear that:

> Pennsylvania law does not recognize the applicability of a general liability policy to breach of contract and breach of warranty claims . . . The purpose and intent of a general liability insurance policy is to protect the insured from essentially accidental injury to the person or property of another rather than coverage for disputes between parties to a contractual undertaking.

*Nationwide Mut. Ins. Co. v. CPB Int'l Inc.*, 562 F.3d 591, 597-99 (3d Cir. 2009); *Pennsylvania Mfrs.' Ass'n Ins. Co. v. L.B. Smith, Inc.*, 831 A.2d 1178, 1181 (Pa. Super. Ct. 2003); *see also Westfield Ins. Co.*, 856 F. Supp. 2d at 694-696; *Specialty Surfaces Int'l Inc.*, 609 F.3d 223, 238 (3d Cir. 2010). McDermott fails to object to State Farm's assertion that the breach of contract action is not recognized as being applicable to a general liability policy and instead focuses on the negligence cause of action found within the underlying PulteGroup action Complaint. (Mem. of Law in Support Cross-Mot. for Summ. J. 2-7.)

McDermott asserts that the negligence claim alleged in the underlying PulteGroup action is sufficient to trigger coverage under State Farm's GCL contracts. (*Id.*) It does so by accepting the Pennsylvania Supreme Court's definition of an "occurrence," but arguing that the events described within the underlying PulteGroup Complaint lack the fortuity required to qualify as accidents. (*Id.*) Meanwhile, State Farm alleges that the events described by the underlying PulteGroup Complaint do not constitute negligence on the part of McDermott but rather, faulty workmanship. The Pennsylvania Supreme Court has held that faulty workmanship in cases such as these does not constitute "accidents" and are therefore not occurrences under CGL policies. *Kvaerner*, 908 A.2d at 899 ("We hold that the definition of "accident" required to establish an

---

analyzing the Complaint as it is written and reading it in line with the contract agreements between the parties. Given the clear language from the Third Circuit in *Berg Chilling* and the absence of subsequent precedential rulings from either the Pennsylvania Supreme Court or the Third Circuit regarding the doctrine's use in the insurance coverage context, this Court will decline to use the gist of the action doctrine in this matter.

occurrence" under the policies cannot be satisfied by claims based upon faulty workmanship. Such claims simply do not present the degree of fortuity contemplated by the ordinary definition of "accident" or its common judicial construction in this context."); *Nationwide Mut. Ins. Co.*, 562 F.3d 591, 596-98 (3d Cir. 2009). This is also true of any damage resulting from the faulty workmanship. *Nationwide Mut. Ins. Co.*, 562 F.3d at 596-98; *Millers Capital Ins. Co. v. Gambone Bros. Dev. Co., Inc.*, 941 A.2d 706, 713 (Pa. Super. Ct. 2007); *Zurich Am. Ins. Co. v. R.M. Shoemaker Co.*, 519 F. App'x 90, 93-94 (3d Cir. 2013) ("Faulty workmanship—whether caused by the contractor's negligence alone or by the contractor's negligent supervision, which then permitted the willful misconduct of its subcontractors—does not amount to an 'accident' or 'occurrence.' . . . Nor does a foreseeable act like the subsequent water infiltration into the structure.").

McDermott argues that because the negligence claims contained in the underlying PulteGroup Complaint did not describe inferior plaster or flashing product and did not allege deceptive action to disguise shoddy workmanship, then the allegations in the PulteGroup Complaint are "based upon the 'inadvertent' and 'unintentional' results of McDermott having paid inadequate attention to the installation process." (Mem. of Law in Support Cross-Mot. for Summ. J. 5.) McDermott cites *Schuylkill Stone Corp. v. State Auto Manual Ins. Co.*, a case similar to the instant matter in which a home developer was sued for allegedly failing to design and construct houses in a workmanlike and satisfactory manner. 735 F. Supp. 2d 150, 153 (D.N.J. 2010). There, the insurer denied coverage because they claimed that the faulty workmanship could not be described as an "accident." *Id.* at 156-159. The court in that case found that an underlying Complaint alleging negligent work performance on the part of the insured triggered the insurance agreements made between the parties. *Id.*

McDermott also cites *Wausau Underwriters Ins. Co.*, in which insurers claim they had no duty to defend or indemnify the insured from claims of breach of implied warranty, implied duty of good workmanship, and duty to exercise reasonable care stemming from the supply of stone fascia for residential homes. 557 F. Supp. 2d 502, 505-08 (D.N.J. 2008). In that case, the court concluded that the negligence claim in the underlying Complaint lacked sufficient information from which to decipher what actions the claim was actually based upon. *Id.* at 515.

The difference, however, between this case and the cases McDermott cites is that in this case McDermott and PulteGroup entered into a contract detailing McDermott's responsibility to perform work in a satisfactory manner. (Second Am. Compl., Ex. B at ¶¶ 4-5, Ex. B-Stucco Contract at ¶¶ 3 and 18; Ex. B-Contractor Agreement; Ex. B-PulteGroup Contract at ¶¶ 3-6.) Moreover, all of McDermott's actions within the Traditions at Washington Crossing community were a result of his contractual agreement. (Second Am. Compl., Ex. B at ¶¶ 4-5.) McDermott's duty to perform tasks in a satisfactory manner stemmed from the contract and did not stem from a responsibility owed due to public policy or custom. (Second Am. Compl., Ex. B at ¶¶ 4-5, Ex. B-Stucco Contract at ¶¶ 3 and 18; Ex. B-Contractor Agreement; Ex. B-PulteGroup Contract at ¶¶ 3-6.)

McDermott contracted to perform his assignment in a "workmanship like manner" in accordance with PulteGroup's specifications and quality requirements, and in accordance with federal regulations. (Second Am. Compl., Ex. B-PulteGroup Contract at ¶¶ 3-6.) McDermott also agreed that his stucco, for a period of five years, would be uniform in appearance and strong; free from chipping, falling, flaking, and separating. (Second Am. Compl., Ex. B-Stucco Contract.) McDermott contracted to be solely responsible that all flashing was in good condition. (Second Am. Compl., Ex. B-Stucco Contract at ¶¶ 3 and 18.) McDermott does not

refute or challenge the legitimacy of any of these contracts but simply argues that this court only consider the fact that a negligence cause of action was alleged in the underlying PulteGroup action, and use that fact to decide that there may be a possibility that liability could rest on negligent work performance. (Mem. of Law in Support Cross-Mot. for Summ. J. 7.)

Pennsylvania state law, however, holds that courts must focus on the substance of the Complaint rather than any particular language. *See Mutual Ben. Ins. Co.*, 725 A.2d at 745 ("[T]he particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered. Instead it is necessary to look at the factual allegations contained in the complaint.") (citations omitted); *Westfield Ins. Co.*, 856 F. Supp. 2d at 694; *Erie Ins. Exch. v. Muff*, 851 A.2d at 926. Moreover, Pennsylvania courts have also specifically counseled that faulty workmanship does not constitute an occurrence even if, as found here, it is cast as a negligence claim. *See Mutual Ben. Ins. Co.*, 725 A.2d at 745 (refusing to let a negligence claim in an underlying complaint drive the analysis of an insurance coverage issue and stating, "to allow the manner in which the complainant frames the request for redress to control in a case such as this one would encourage litigation through the use of artful pleadings designed to avoid exclusions in liability insurance policies."); *Westfield Ins. Co.*, 856 F.Supp.2d at 693-695 ("[I]n order for a claim to trigger coverage, there must be a causal nexus between the property damage and an 'occurrence,' *i.e.*, a fortuitous event. Faulty workmanship, even when cast as a negligence claim, does not constitute such an event, nor do natural and foreseeable events like rainfall.") (collecting cases).

Here, regardless of how it is framed in the underlying PulteGroup Complaint, McDermott's potential liability stems from his alleged failure to meet expectations which he was contractually obligated to meet. Whether McDermott failed to meet his obligations through

negligence or willful shortcuts does not control this analysis. McDermott's alleged failure to live up to contractual obligations cannot be seen as an accident or some unforeseeable event, as McDermott was specifically tasked with forestalling such a result. Therefore, this Court finds that there is no genuine issue of material fact with regard to whether the underlying PulteGroup action alleged an occurrence within the meaning of the State Farm agreements. State Farm is not required to defend or indemnify McDermott from the underlying PulteGroup action.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff State Farm's Motion for Summary Judgment will be granted. Defendant McDermott's Cross-Motion for Summary Judgment will be denied. An appropriate order follows.